1  Malcolm A. Heinicke* (CA Bar No. 194174)
   V. Grace Davis* (CA State Bar No. 336732)
2  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
3  San Francisco, California 94105-2907
   Telephone:   (415) 512-4000
4  Malcolm.Heinicke@mto.com
   Grace.DavisFisher@mto.com
5
   Craig Jennings Lavoie* (CA Bar No. 293079)
6  Jennifer L. Bryant* (CA Bar No. 293371)
   Jin Niu* (CA Bar No. 362447)
7  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, Fiftieth Floor
8  Los Angeles, California 90071-3426
   Telephone:   (213) 683-9100
9  Craig.Lavoie@mto.com
   Jennifer.Bryant@mto.com
10 Jin.Niu@mto.com

11 Theresa Cole Rassàs (AZ Bar No. 023416)
   Brandon T. Delgado (AZ Bar No. 035924)
12 OSBORN MALEDON, P.A.
   2929 North Central Avenue, 21st Floor
13 Phoenix, Arizona 85012-2793
   Tel (602) 640-9000
14 Fax (602) 650-9050
   trassas@omlaw.com
15 bdelgado@omlaw.com

16 Attorneys for Defendant
   Phoenix Mercury Basketball, LLC
17 * Admitted *pro hac vice*

18

19                    IN THE UNITED STATES DISTRICT COURT

20                            FOR THE DISTRICT OF ARIZONA

21

| 22 | Anitra Blue, | No. CV-25-02320-PHX-KML |
|---|---|---|
| 23 | Plaintiff, | **DEFENDANT PHOENIX MERCURY BASKETBALL, LLC'S MOTION TO COMPEL ARBITRATION** |
| 24 | vs. | |
| 25 | Phoenix Mercury Basketball, LLC, | **(Oral Argument Requested)** |
| 26 | Defendant. | |

27

28

Defendant Phoenix Mercury Basketball, LLC (the "Mercury" or "Team") moves under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, *et. seq.*, for an order (i) compelling Plaintiff Anitra Blue to submit her Complaint to binding arbitration, and (ii) staying all proceedings in this Court pending arbitration. The Mercury supports this Motion with the concurrently-filed Declarations of James Pitman, Kim Corbitt, and Malcolm Heinicke.

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff—a former coach for the Mercury—brings this action asserting a claim for discrimination under 42 U.S.C. § 1981. Specifically, she claims that the Team discriminated against her during her employment when it selected someone else to assume the non-interim head coach position. The Team vigorously and categorically denies Plaintiff's allegations.

But the merits are for another day because the FAA requires an order compelling Plaintiff to arbitrate her claim. Plaintiff signed a broad arbitration clause. In it she agreed to resolve through binding arbitration "[a]ny and all disputes arising under, pertaining to or touching upon" the "statutory rights or obligations of either" her or the Mercury, including specifically "all disputes involving alleged unlawful discrimination … committed by the Mercury." *See* Declaration of James Pitman ("Pitman Decl.") Ex. A (March 27, 2022 Employment Agreement) at § 11(H)(ii) (the "Arbitration Clause").

Because the Agreement delegates all questions of arbitrability to the arbitrator, the Court's task is simple: to determine "whether an arbitration agreement was formed." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). The parties did form an arbitration agreement, and so Plaintiff must be compelled to arbitration, where she can assert her various arguments before an arbitrator if she so chooses.

To avoid unnecessary motion practice, the Team, before filing this Motion, asked Plaintiff to arbitrate her claims voluntarily. Plaintiff refused, arguing that because her employment with the Team has now ended, so too has her obligation to arbitrate her claims. That argument fails. Courts routinely apply arbitration agreements to post-employment disputes. And here the Agreement expressly provides that "[u]pon the termination of this Agreement by the Mercury for any reason whatsoever, or upon the termination of this

Agreement by [Plaintiff] Blue . . ., the Dispute Resolution provisions . . . shall continue to govern any disputes arising hereunder." Pitman Decl. Ex. A (Agreement) at § 7(D). Whether or not still employed, Plaintiff must arbitrate her claims.

## II.   STATEMENT OF FACTS

### A.   The Team Hires Plaintiff as an Assistant Coach, and Plaintiff Agrees to Arbitrate "Any and All Disputes" Related to Her Employment.

In March 2022, the Mercury hired Plaintiff as an Assistant Coach for a one-year term. Pitman Decl. ¶ 3. Plaintiff signed her Employment Agreement on March 27, 2022, memorializing her employment terms. *See id.* Ex. A.[1]

The Employment Agreement includes a mandatory dispute resolution provision governing "[a]ny and all disputes arising under, pertaining to or touching upon this Agreement, *or* the statutory rights or obligations of either Party hereto." Pitman Decl. Ex. A (Agreement) at § 11(H) ("Dispute Resolution") (emphasis added). Per the Agreement, all such disputes shall initially "be subject to non-binding mediation before an independent mediator." *Id.* § 11(H)(i). "In the event that the dispute is not settled through mediation," the "Parties shall then proceed to binding arbitration," *id.* § 11(H)(ii), and "[i]ssues of procedure, arbitrability, or confirmation of award shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16," *id.* § 11(H)(iii).

As relevant here, the Arbitration Clause expressly requires arbitration of:

> ALL DISPUTES INVOLVING ALLEGED UNLAWFUL EMPLOYMENT DISCRIMINATION, TERMINATION BY ALLEGED BREACH OF CONTRACT OR POLICY, OR ALLEGED EMPLOYMENT TORT COMMITTED BY THE MERCURY, . . . INCLUDING CLAIMS OF VIOLATIONS OF FEDERAL OR STATE DISCRIMINATION STATUTES OR PUBLIC POLICY.

*Id.* § 11(H)(ii).

---

[1] Courts may "consider evidence outside the pleadings when resolving a motion to compel arbitration." *Scott-Ortiz v. CBRE Inc.*, 501 F. Supp. 3d 717, 720–21 (D. Ariz. 2020). "To the extent there are conflicts in the evidence submitted by the parties, the court applies a standard similar to that applicable for a motion for summary judgment." *Id.*

The Arbitration Clause also contains a broad provision (the "Delegation Clause") delegating all questions of arbitrability to the arbitrator. *Id.* The Delegation Clause specifies that arbitration "shall" be governed by "the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ('AAA') in effect on the date of the first notice of demand for arbitration" (the "AAA Rules"). *Id.* The AAA Rules, in turn, empower the arbitrator to "rule on their own jurisdiction," including issues regarding "the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim."[2] That Delegation Clause was in place at the time Plaintiff entered her Employment Agreements.[3]

The Dispute Resolution provision, including the Arbitration Clause, remains in force even if the Employment Agreement is terminated. *See* Pitman Decl. Ex. A at § 7(D) ("Upon the termination of this Agreement . . . the Dispute Resolution provisions of [§ 11(H)] shall continue to govern any disputes arising hereunder.").[4]

### B. Plaintiff is Named Interim Head Coach During the 2023 Season, and Her Agreement to Arbitrate "Any and All Disputes" Related to Her Employment Remains in Full Force and Effect.

At the beginning of Plaintiff's second season as an Assistant Coach, the Team increased Plaintiff's salary and extended the term of the Agreement for two additional years. Pitman Decl. ¶ 4. Plaintiff's salary increase, and the extension of the term, were memorialized in a First Amendment to her Employment Agreement. *Id*. Ex. B (March 13,

---

[2] *See* https://www.adr.org/media/0vrpbnm0/2025_employment_arbitration_rules.pdf.

[3] *See* https://www.adr.org/media/sj3jfivl/employmentrules_web_3.pdf, 2023 AAA Rules at 6(a); and https://www.adr.org/media/tcpbpzhy/employment-arbitration-rules-and-mediation-procedures-january-1-2016.pdf, 2016 AAA Rules at 6(a).

[4] Due to an apparent typographical/drafting error, § 7(D) of the Agreement refers to "the Dispute Resolution provisions of Section 10H." *See* Pitman Decl. Ex. A at § 7(D). The sole "Dispute Resolution" provisions in the Agreement, however, are located in § 11(H), not § 10(H). *See id.* §§ 10, 11(H). The plain language of § 7(D), including its express reference to the "Dispute Resolution" section, confirms the parties' intent to continue the Dispute Resolution provisions of the Agreement. *See* Pitman Decl. Ex. A at § 11(H).

2023 First Amendment to Employment Agreement). The First Amendment confirmed that all other provisions in Plaintiff's Employment Agreement, including the Dispute Resolution provision, "shall remain in full force and effect." *Id.* § 4. Like the original Employment Agreement, the First Amendment was made and entered into by and between Phoenix Mercury Basketball, LLC and Plaintiff, and as with the original Agreement, the Mercury's then-General Manager, James Pitman, executed the amendment on behalf of the Team. *See id.* Plaintiff accessed and electronically signed the First Amendment using DocuSign on or about March 15, 2023. Declaration of Kim Corbitt ("Corbitt Decl.") ¶ 6.

On June 25, 2023, partway through Plaintiff's second season with the Team, the Mercury parted ways with its Head Coach. Compl. ¶ 30; Pitman Decl. ¶ 5. With the rest of the season to follow, including three games scheduled for the following week, the Team asked Plaintiff to step in as Interim Head Coach. Compl. ¶ 31; Pitman Decl. ¶ 5. Plaintiff agreed. Compl. ¶¶ 31–32.

The Team then increased Plaintiff's salary once again. Pitman Decl. ¶ 5 & Ex. A at § 5. Plaintiff's second salary increase was set forth in a Second Amendment to her Employment Agreement. Pitman Decl. Ex. C (June 25, 2023 Second Amendment to Employment Agreement). Like the First Amendment, the Second Amendment stated that all other provisions in Plaintiff's March 2022 Employment Agreement, including the Arbitration Clause, "shall remain in full force and effect." *Id.* § 4. The Second Amendment was not signed, but the parties operated according to its terms, with Plaintiff performing as Interim Head Coach and receiving the increased salary set forth in the Second Amendment. Pitman Decl. ¶ 5; Corbitt Decl. ¶ 8. Indeed, Plaintiff acknowledges that on "June 25, 2023, a Second Amendment was made." Compl. ¶ 12.

Plaintiff served as Interim Head Coach for the last three months of the 2023 season. Coach Nate Tibbetts was named the new Head Coach in October 2023, but the Team paid Plaintiff her Interim Head Coach salary through January 31, 2025—the end of the Agreement's amended term. Pitman Decl. ¶ 6; Corbitt Decl. ¶ 8.

### C. Plaintiff Files a Section 1981 Lawsuit in Violation of the Arbitration Clause.

On July 2, 2025, Plaintiff filed a Complaint alleging that the Team had discriminated against her in violation of 42 U.S.C. § 1981. As detailed below, her claim falls squarely within the Arbitration Clause in her Employment Agreement, which expressly covers "all disputes involving alleged unlawful employment discrimination, termination by alleged breach of contract or policy, or alleged employment tort committed by the Mercury, or a representative of the Mercury, including claims of violations of federal or state discrimination statutes." Pitman Decl. Ex. A (Agreement) at § 11(H)(ii) (capital letters omitted). Plaintiff brought her discrimination claim in federal court notwithstanding her agreement to "proceed to binding arbitration" and her agreement that "there shall be no recourse to court, with or without a jury trial," for such claims. *Id.* (capital letters omitted).

The Mercury's counsel attempted to avoid this Motion by providing Plaintiff's counsel with the applicable arbitration agreement and requesting that Plaintiff stipulate to arbitration, but Plaintiff refused, contending in various ways that the Dispute Resolution provisions of her Agreement no longer apply now that her employment has ended. Declaration of Malcolm Heinicke ("Heinicke Decl.") Ex. 2 (Plaintiff's July 18, 2025 Letter to Defs.' Counsel). Plaintiff's counsel did not address the Delegation Clause. *See id.*

### III. <u>ARGUMENT</u>

#### A. The FAA Requires Enforcement of Arbitration Agreements.

By the Agreement's express terms, the FAA governs here. Pitman Decl. Ex. A (Agreement) at § 11(H)(iii) (noting that the FAA governs "[i]ssues of procedure" and "arbitrability").[5] Section 2 of the FAA provides that agreements to arbitrate are "valid,

---

[5] Plaintiff has not disputed that the FAA applies here. Nor could she. Even without the Agreement's express reference to the FAA, the statute would still apply. It governs all contracts, like Plaintiff's, "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Mercury competes against the WNBA's other teams across the country. *See, e.g., McDonough v. Bidwill*, No. CV-24-00764-PHX-DWL, 2025 WL 487171, at *4 (D. Ariz. Feb. 13, 2025) (applying FAA to arbitration provision in NFL employment agreement and

irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 requires courts to compel "parties to proceed to arbitration in accordance with the terms of the[ir] [arbitration] agreement." *Id.* § 4.

As the United States Supreme Court has repeatedly emphasized, the FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted). The Supreme Court has made clear that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). In short, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also MacDonald v. Rocket Mortg. LLC*, No. CV-23-02558-PHX-KML, 2024 WL 5200480, at *2 (D. Ariz. Dec. 23, 2024) (the FAA "requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement") (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)).

### B. Plaintiff Must Arbitrate Her Claim

#### 1. The Parties' Arbitration Agreement Was Validly Formed, and Issues of Arbitrability Are Delegated to the Arbitrator.

In determining whether to compel arbitration, "[t]he FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: (1) whether a valid agreement

---

granting motion to compel); *Flores v. Nat'l Football League*, 658 F. Supp. 3d 198, 205–06 (S.D.N.Y. 2023) (accord). Given the Team's interstate activities, the Employment Agreement's nexus to interstate commerce easily satisfies the FAA's "involving commerce" requirement, which is "the functional equivalent" of the "broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

1  to arbitrate exists; and if it does, (2) whether the agreement encompasses the dispute at
2  issue." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).  The court's role on
3  a motion to compel arbitration is further restrained where, as here, the arbitration agreement
4  contains a valid and enforceable delegation clause that "assign[s] these gateway questions
5  to an arbitrator." *Id.* at 1009.

6        A delegation clause, like the one here, is "an additional, antecedent agreement" to be
7  enforced by the district court. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)
8  (emphasis omitted).  When a delegation clause exists, then the court's inquiry narrows to
9  one question: whether "the parties did form an agreement to arbitrate containing an
10 enforceable delegation clause." *Caremark*, 43 F.4th at 1030.  If so, "all arguments going to
11 the scope or enforceability of the arbitration provision are for the arbitrator to decide in the
12 first instance." *Id.*

13        Here, the parties agreed to delegate all arbitrability issues to the arbitrator.  The
14 Agreement's Delegation Clause specifies that arbitration "shall" be governed by the AAA
15 Rules, which empower the arbitrator to "rule on their own jurisdiction," including "the
16 existence, scope, or validity of the arbitration agreement or the arbitrability of any claim."
17 Pitman Decl. Ex. A (Agreement) at § 11(H)(ii); *see* AAA Rules R-7(a).  The parties'
18 "incorporation of the AAA rules" constitutes "clear and unmistakable" evidence of the
19 parties' agreement to "arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130
20 (9th Cir. 2015); *see Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir.
21 2013) ("Virtually every circuit to have considered the issue has determined that
22 incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence
23 that the parties agreed to arbitrate arbitrability.").

24        In these circumstances, the only question for the Court to decide is "whether an
25 arbitration agreement was formed." *Caremark*, 43 F.4th at 1030; *see McDonough*, 2025 WL
26 487171, at *4 (only a contract "formation challenge" is nondelegable).  In making that
27 determination, courts "apply general state-law principles of contract interpretation, while
28 giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to

the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).

Plaintiff does not dispute that the Employment Agreement, including the Arbitration Clause therein, was validly formed under Arizona law. *See* Pitman Decl. Ex. A (Agreement) at § 11(E) (Arizona choice-of-law clause); *see also* Heinicke Decl. Ex. 2. Nor can she. The Arbitration Clause was supported by "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Williams v. Experian Info. Solutions Inc.*, No. CV-23-1076-PHX-DWL, 2024 WL 3876171, at *12 (D. Ariz. Aug. 20, 2024) (citing *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019)); *see* Pitman Decl. Ex. A (Agreement) at §§ 3, 5, 11 (describing compensation offered to, and accepted by, Plaintiff as consideration for Plaintiff's agreement to arbitrate her claims and setting forth the parties' respective obligations). The parties thus validly formed an agreement to arbitrate. *See Caremark*, 43 F.4th at 1030.

The Arbitration Clause delegates all remaining issues of arbitrability to the arbitrator. *See* Pitman Decl. Ex. A (Agreement) at § 11(H)(ii) (incorporating AAA Rules); *see also Brennan*, 796 F.3d at 1130 ("incorporation of the AAA rules" constitutes "clear and unmistakable" evidence of the parties' agreement to "arbitrate arbitrability"). As a result, there is no need for the Court to proceed further before granting this Motion because "all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Caremark*, 43 F.4th at 1030.

### 2. Even if There Were No Delegation Clause, Plaintiff's Challenges to Arbitrability Would Still Fail.

Because the parties expressly delegated all questions of arbitrability to the arbitrator, the Court need not—and indeed may not—resolve those issues. *See Caremark*, 43 F.4th at 1030; *see also id.* at 1032 n.10 ("in the presence of a valid delegation clause, the arbitrator—and not the court—would have to determine" issues of arbitrability). Even if there was no delegation clause and the Court could reach the challenges to arbitrability that Plaintiff asserted during the meet-and-confer process, those challenges would fail as a matter of law.

***Plaintiff's Claim Falls Within the Scope of the Arbitration Clause.*** Plaintiff does not and cannot dispute that her § 1981 claim falls squarely within the ambit of the Arbitration Clause. *See* Heinicke Decl. Ex. 2 at 1–2. Plaintiff agreed to arbitrate all claims "arising under, pertaining to or touching upon [the] Agreement, or the statutory rights or obligations of either Party [t]hereto." Pitman Decl. Ex. A (Agreement) at § 11(H)(i). The Arbitration Clause further confirms that "ALL DISPUTES INVOLVING ALLEGED UNLAWFUL EMPLOYMENT DISCRIMINATION . . . INCLUDING CLAIMS OF VIOLATIONS OF FEDERAL OR STATE DISCRIMINATION STATUTES . . . SHALL BE RESOLVED" via arbitration. *Id.* at § 11(H)(ii). This clear language covers Plaintiff's claim that she was subject to "alleged unlawful employment discrimination" in violation of § 1981, a federal discrimination statute (Compl. ¶¶ 49–55). *See* Pitman Decl. Ex. A (Agreement) at § 11(H)(ii); *see also Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 946 (D. Ariz. 2011) (compelling arbitration under clause requiring arbitration of "all disputes involving alleged unlawful employment discrimination, termination by breach of alleged contract or policy, or employment tort" and recognizing that such language is "clear, plain, unequivocal and explicit").

***Plaintiff Remains Bound by the Arbitration Clause.*** In her pre-motion correspondence, Plaintiff contended she is no longer bound by the Arbitration Clause for various reasons. Those arguments are not for the Court to decide because of the Delegation Clause, as discussed above. They are also meritless.

*First*, Plaintiff is wrong that the Arbitration Clause "concluded on or before March 31, 2023." *See* Heinicke Decl. Ex. 2 at 1. The Employment Agreement was amended by the First Amendment and the Second Amendment, both of which incorporated the Dispute Resolution Provision. Plaintiff apparently will assert that her original Employment Agreement was never properly amended. She is wrong, but right or wrong the effect is the same because the original Agreement also would require arbitration post-employment. *See* Pitman Decl. Ex. A (Agreement) at § 7(D) ("Upon the termination of this Agreement . . . the Dispute Resolution provisions of [§ 11(H)] shall continue to govern any disputes arising

hereunder."). Thus, even if Plaintiff is somehow correct that her Agreement "concluded" in March 2023, despite her continued employment and salary payments through January 2025, Plaintiff still must arbitrate her claims.

But Plaintiff's premise is also incorrect—the Agreement did not conclude in March 2023. The First Amendment extended the term to January 31, 2025. *See* Corbitt Decl. ¶ 6; Pitman Decl. Ex. B (First Am.) at § 2 ("Section 1 of the Agreement is amended to provide that the Agreement shall be for a term . . . continuing until January 31, 2025") (effective March 13, 2023). Plaintiff admits, as she must, that she "served as interim Head Coach until October 16, 2023," the day she learned she would not be named Head Coach. Compl. ¶ 9. All of the alleged events in support of Plaintiff's § 1981 claim occurred on or before that date. *See* Compl. ¶¶ 8–12, 26–48, 51–53. And the Mercury continued to pay Plaintiff through January 2025, the end of the Agreement's amended term. Corbitt Decl. ¶ 8. Thus, Plaintiff was still employed and subject to the Employment Agreement when her claim accrued. *See Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2010) (a § 1981 claim "accrues when the plaintiff learns of the 'actual injury,' i.e., an adverse employment action, and not when the plaintiff suspects a 'legal wrong,' i.e., that the employer acted with a discriminatory intent"). Again, however, even if the First Amendment was never entered into (it clearly was), the Dispute Resolution provision of the original Employment Agreement, including its mandatory arbitration provision, would still expressly apply to claims that accrue post-termination.

*Second*, contrary to Plaintiff's contention, the First Amendment is not somehow "inapplicable" because the company name "Suns Legacy Partners, LLC" appears in the signature line instead of the name "Phoenix Mercury Basketball, LLC." *See* Heinicke Decl. Ex. 2 at 1. James Pitman—then the Mercury's General Manager—executed the First Amendment for the Mercury, just as he had signed the original Agreement. Pitman Decl. ¶ 4 & Ex. B (First Am.) at p. 3. Phoenix Mercury Basketball, LLC is the expressly named party to the First Amendment, and in signing the First Amendment for the Phoenix Mercury, Mr. Pitman represented that he had the authority to bind the party for which he was

-10-
MOTION TO COMPEL ARBITRATION

signing. *See* Pitman Decl. Ex. A (Agreement) at p. 9; *id.* Ex. B (First Am.) § 5 ("Each individual signing on behalf of an entity represents and warrants that he or she has the necessary power and authority to execute and deliver this Amendment and to bind such entity to the terms hereof").

Indeed, to the extent Plaintiff contends that the signature line somehow rewrites the terms of the contract to make Suns Legacy Partners, LLC the counter-party, the Agreement's Dispute Resolution provision, incorporated into the First Amendment, specifically covers claims against the Mercury, confirming that "all disputes involving alleged unlawful employment discrimination . . . or alleged employment tort committed by the Mercury, or a representative of the Mercury" shall be resolved via arbitration. *See* Pitman Decl. Ex. A § 11(H)(ii) (capital letters omitted). Thus, even if Plaintiff were correct, the Mercury would still nevertheless be a third-party beneficiary to the Agreement entitled to enforce the Agreement's Arbitration Clause. *See, e.g.*, *Cristales v. Scion Grp. LLC*, 478 F. Supp. 3d 845, 852 n.2, 859 (D. Ariz. 2020) (granting nonsignatory's motion to compel arbitration and recognizing that "[n]onsignatories can enforce arbitration agreements as third-party beneficiaries" (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006))).

If, on the other hand, Plaintiff means to contend that the First Amendment never took effect, then under the terms of the original Agreement Plaintiff must arbitrate her claims. *See* Pitman Decl. Ex. A (Agreement) at §§ 7(D), 11(H).

*Finally*, Plaintiff's appointment to Interim Head Coach, as reflected in the Second Amendment, in no way terminated the Employment Agreement—much less the Arbitration Clause therein that expressly survives termination. *See* Heinicke Decl. Ex. 2 at 1–2. The Second Amendment made clear that aside from the increased salary and change in duties, all other provisions in the Agreement, including the Arbitration Clause, "shall remain in full force and effect." Pitman Decl. Ex. C (Second Am.) at § 4.

Plaintiff's assertion that the Second Amendment did not take effect because it was not formally executed, Heinicke Decl. Ex. 2 at 1–2, also fails. "A contract may be formed, even if not formally executed, if it is clear the parties intended to bind themselves to the

terms." *TD Pro. Servs. v. Truyo Inc.*, No. CV-22-00018-PHX-MTL, 2024 WL 5046443, at *7 (D. Ariz. Dec. 9, 2024) (quoting *Johnson Int'l, Inc. v. City of Phx.*, 192 Ariz. 466, 470 (Ariz. Ct. App. 1998)); *see PROformance Vend USA Inc. v. Jones Lang LaSalle Inc.*, No. CV-24-02013-PHX-ROS, 2025 WL 406748, at *3 (D. Ariz. Feb. 5, 2025) ("A court may look to surrounding circumstances and the conduct of the parties to determine the parties' intent" (quoting *Johnson*, 192 Ariz. at 471)). The parties' conduct confirms their intent to be bound here. The parties operated according to the Second Amendment's terms, with Plaintiff receiving both the Interim Head Coach position and the salary increase set forth in the Second Amendment. Pitman Decl. ¶ 5; Corbitt Decl. ¶ 8. The parties thus mutually assented to, and were bound by, the Second Amendment.

***The Arbitration Clause is Not Unconscionable.*** In her meet-and-confer correspondence, Plaintiff alluded to the notion that "arbitration agreements are subject to the same defenses as any other contract, including both substantive and procedural unconscionability." Heinicke Decl. Ex. 2 at 2. To the extent Plaintiff contends that the Dispute Resolution provisions to which she expressly agreed are somehow unconscionable, that argument also fails.

As an initial matter, any unconscionability defense is for the arbitrator to decide, not this Court. As Judge Lanza explained recently, an "unconscionability challenge is a quintessential example" of an arbitrability challenge that "may be delegated to the arbitrator." *McDonough*, 2025 WL 487171, at *12. When an arbitration agreement incorporates the AAA employment rules, as the Agreement expressly does here, the "incorporation of such rules constitutes a clear delegation of authority to the arbitrator," and "[a]rguments that the arbitration provision as a whole is unconscionable or otherwise unenforceable are for the arbitrator, not the court, to decide." *Yu v. Volt Info. Scis., Inc.*, No. 19-cv-01981-LB, 2019 WL 3503011 at *4–5 (N.D. Cal. Aug. 1, 2019) (citations omitted).

Even if the issue were properly before the Court, Plaintiff cannot show that the Arbitration Clause (or the Delegation Clause within it) is procedurally or substantively unconscionable.

Plaintiff has not identified anything about the agreement that is procedurally unconscionable. *See* Heinicke Decl. Ex. 2 at 2. Procedural unconscionability "targets 'unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should.'" *Monsanto v. DWW Partners, LLLP*, No. CV-09-01788-PHX-FJM, 2010 WL 234952, at *3 (D. Ariz. Jan. 15, 2010) (quoting *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 88–89 (1995)). Plaintiff cannot show unfair surprise here because the Arbitration Clause features "clear and conspicuous" language, in capital letters, as part of a less than 10-page Employment Agreement. *See* Pitman Ex. A (Agreement) at § 11(H)(ii); *see also Monsanto*, 2010 WL 234952, at *3 (compelling employee's § 1981 claim to arbitration based on "clear and conspicuous" arbitration clause). Plaintiff likewise cannot establish that the Agreement was a form agreement presented on a take-it-or leave it basis; the Agreement was specific to her, and she entered it voluntarily.

Plaintiff has not identified any substantive unconscionability either. *See* Heinicke Decl. Ex. 2 at 2. Substantive unconscionability "is concerned with actual terms that are so one-sided as to oppress or unfairly surprise an innocent party." *Monsanto*, 2010 WL 234952, at *3 (quoting *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 252 (Ariz. Ct. App. 2005)). The terms of the Arbitration Clause do not even come close to being "unfairly one-sided." *Id.* The Arbitration Clause is a standard bilateral agreement to arbitrate that adopts the rules of a nationally recognized arbitration provider. *See* Pitman Decl. Ex. A (Agreement) at § 11(H)(ii). And AAA's arbitration procedures for employment disputes are not substantively unconscionable as a matter of law. *See, e.g.*, *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1134 (C.D. Cal. 2006) (the AAA Employment Dispute Resolution Rules "have been carefully drafted by the AAA to ensure they are fair to all parties"). Taken together, the various features of the Arbitration Clause—its mutual application, the incorporation of a neutral and well-known arbitration association's rules, and the limitations on Plaintiff's filing costs incorporated in those rules—make it impossible for Plaintiff to establish substantive unconscionability here.

In sum, any challenges to the arbitrability of this dispute are not only committed exclusively to the arbitrator—they lack merit. Plaintiff is bound by the Arbitration Clause to which she agreed.

### C. The Court Should Stay and Administratively Close the Proceeding.

Where, as here, a dispute is subject to arbitration under the terms of a written agreement, the FAA "compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (citing 9 U.S.C. § 3). Accordingly, the Mercury respectfully requests that the Court order Plaintiff to arbitrate her claim and stay and administratively close this case. *See MacDonald*, 2024 WL 5200480, at *5 (granting motion to compel arbitration and "administratively clos[ing]" the case).

## IV. CONCLUSION

For these reasons, the Mercury respectfully requests that the Court grant its Motion to Compel and stay this matter pending arbitration.

DATED: July 28, 2025              MUNGER, TOLLES & OLSON LLP

                                  By: /s/ Malcolm A. Heinicke
                                  Malcolm A. Heinicke (*pro hac vice*)
                                  560 Mission Street, Twenty-Seventh Floor
                                  San Francisco, California 94105-290

                                  *Attorneys for Defendant*
                                  *Phoenix Mercury Basketball, LLC*

                                  OSBORN MALEDON, P.A.

                                  Theresa Cole Rassàs
                                  Brandon T. Delgado
                                  2929 North Central Avenue, 21st Floor
                                  Phoenix, Arizona 85012-2793

                                  *Attorneys for Defendant*
                                  *Phoenix Mercury Basketball, LLC*