**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anitra Blue,<br><br>           Plaintiff,<br><br>v.<br><br>Phoenix Mercury Basketball LLC,<br><br>           Defendant. | No. CV-25-02320-PHX-KML<br><br>**ORDER** |

Plaintiff Anitra Blue worked as a coach for defendant Phoenix Mercury Basketball, LLC ("Phoenix Mercury") and now alleges Phoenix Mercury subjected her to disparate treatment based on race in violation of 42 U.S.C. § 1981. Phoenix Mercury seeks to compel arbitration because Blue allegedly agreed to an arbitration clause contained within her employment contract. The motion to compel arbitration is granted.

**I.  Standard for Motion to Compel**

In resolving a motion to compel arbitration, the court uses "the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). This requires "view[ing] the evidence in the light most favorable to the nonmoving party." *Rocha v. Asurion, LLC*, 724 F. Supp. 3d 1213, 1219 (E.D. Wash. 2024).

**II.  Factual Background**

Phoenix Mercury, a professional women's basketball team, hired Anitra Blue as an assistant coach on March 27, 2022 and promoted her to interim head coach on June 25,

2023. (Doc. 1 at 4.) A few months later, on October 16, 2023, Phoenix Mercury terminated Blue's employment. (Doc. 1 at 4.) The contractual relationship between parties during the course of Blue's employment developed as follows.

Blue was initially hired as an assistant coach pursuant to a one-year employment contract that ran from March 28, 2022 until March 31, 2023. (Doc. 1 at 4.) That contract was signed by Blue and Jim Pitman, the "Executive Vice President & General Manager" of "Phoenix Mercury Basketball, L.L.C." (Doc. 8-2 at 10.) Section 11(H) of the contract addressed "Dispute Resolution." (Doc. 8-2 at 9.) Under that section, disputes must first be pursued through non-binding mediation and then, if mediation is unsuccessful, by binding arbitration governed by the rules of the American Arbitration Association, with no recourse to a court. (Doc. 8-2 at 9.) The arbitration provision covers "all disputes involving alleged unlawful employment discrimination, termination by alleged breach of contract or policy, or alleged employment tort committed by the Mercury, or a representative of the Mercury, including claims of violations of federal or state discrimination statutes." (Doc. 8-2 at 9 (capitalizations omitted).) Meanwhile, "[i]ssues of procedure, arbitrability, or confirmation of award [would] be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16." (Doc. 8-2 at 9.) The employment agreement also makes clear (incorrect internal cross-referencing aside) the dispute resolution provisions "shall continue to govern any disputes arising hereunder" following the contract's termination. (Doc. 8-2 at 6.)

Shortly before the initial contract expired, on March 13, 2023, the parties amended the contract to extend Blue's employment term until January 31, 2025 and to increase her compensation. (Doc. 1 at 5.) The first amendment began by stating it was an agreement "by and between Phoenix Mercury Basketball, L.L.C. . . . and Nikki Blue" and references "the Mercury" throughout. (Doc. 8-3 at 2-3.) It provided "that all other provisions of the [March 2022] Agreement which do not conflict with the provisions of this Amendment remain in full force and effect." (Doc. 8-3 at 3.) Contrary to the rest of the document, the signature page reflected that James Pitman was signing on behalf of "Suns Legacy Partners, L.L.C." rather than the Phoenix Mercury. (Doc. 8-3 at 4.) The parties operated according

to the first amendment's terms. (*See* Doc. 1 at 5.)

On June 25, 2023, the parties again amended the contract to reflect Blue's promotion to interim head coach, including changes in responsibilities and Blue's compensation. (Doc. 1 at 5.) Like the first amendment, the second amendment stated all other provisions of the parties' earlier agreements which did not conflict with the second amendment remained "in full force and effect." (Doc. 8-4 at 3.) Neither party signed the second amendment, but both parties "operated according to its terms." (Doc. 8-1 at 3.) Blue's complaint acknowledges the "Second Amendment was made" (Doc. 1 at 5) and Blue "received the promised salary increase" that amendment established (Doc. 1 at 10).

After the second amendment took effect, Blue began experiencing what she viewed as disparate treatment. Among other things, Blue was excluded from important team decision-making and celebrations and was required to relocate her office on short notice. (Doc. 1 at 11, 13.) In August 2023, Blue complained "about the disparate treatment she had been facing," claiming "the male coaching staff of the Phoenix Suns" would have not been subjected to similar behavior. (Doc. 1 at 13.) On October 16, 2023, Phoenix Mercury terminated Blue's contract. (Doc. 1 at 4.) Phoenix Mercury continued paying Blue until January 31, 2025, which the first amendment lists as the date of contract termination and the second amendment did not change. (Doc. 8 at 5; *see* Doc. 8-3 at 2.) In July 2025, Blue filed this suit asserting a single claim for race discrimination in employment.

### III. Analysis

#### A. Motions to Compel Arbitration

"The Federal Arbitration Act (FAA) requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing 9 U.S.C. § 3).[1] Doubts as to arbitrability "'should be resolved in favor of arbitration' [and] the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citing

---
[1] Blue does not contest that her employment relationship was not exempt under the terms of the FAA. 9 U.S.C. § 2.

- 3 -

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). "The FAA limits the court's role to 'determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.'" *Berman*, 30 F.4th at 855 (citation omitted). But a delegation provision—one that "assign[s] these gateway questions to an arbitrator"—may further limit a federal court's review. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).

Blue "does not dispute that there was, for a period of time, an enforceable arbitration provision" in her initial employment contract. (Doc. 10 at 3.) Blue also does not dispute that if the arbitration provision remained enforceable throughout 2023, its scope would cover the events at issue and her § 1981 claim. (*See* Doc. 10.)

### B. Judicial Review Over Arbitrability

The parties dispute who should decide arbitrability. Phoenix Mercury argues the parties delegated threshold arbitrability issues to the arbitrator. (Doc. 8 at 8.) Blue argues arbitrability is for the court to decide. (Doc. 10 at 3.)

Where the parties have clearly and unmistakably delegated questions of arbitrability to the arbitrator, the court decides only whether "the parties did form an agreement to arbitrate containing an enforceable delegation clause." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) ("contract formation is *always* an issue for the court"). If the parties did form such an agreement, the FAA requires the court to send the question of arbitrability—for example, "whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all"—to the arbitrator. *Id*. at 1029.

The parties acknowledge the FAA applies to the contract and that they explicitly agreed the FAA would govern the question of arbitrability. (Doc. 8-2 at 9 ("Issues of procedure, arbitrability, or confirmation of award shall be governed by the Federal Arbitration Act").) They also agreed the American Arbitration Association ("AAA") rules would govern the arbitration (Doc. 8-2 at 9), which "constitutes clear and unmistakable

- 4 -

evidence that contracting parties agreed to arbitrate arbitrability."[2] *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."). The delegation clause here is therefore valid and delegates threshold questions of arbitrability to the arbitrator.

Accordingly, the sole question before the court is whether the parties formed a valid agreement to arbitrate. *Caremark*, 43 F.4th at 1030. The parties agree they did. Blue "does not dispute that there was, for a period of time, an enforceable arbitration provision" in her initial employment contract. (Doc. 10 at 3.) She does not make any argument regarding contract formation, resting her opposition only on expiration and non-renewal.[3] (*See* Doc. 10.) But "[i]ssues of termination, unlike issues of formation, fall outside the scope of the district court's jurisdiction under the FAA" and will not keep an arbitrability question in court where there is a valid delegation clause. *Collett v. Ancestry.com DNA LLC*, No. 19-CV-03743-RS, 2019 WL 13253477, at *3 (N.D. Cal. Dec. 19, 2019). Whether the arbitration clause remained in force during the events Blue alleges must therefore be decided in this case by an arbitrator.

/
/
/
/

---

[2] This is because AAA rules delegate questions of arbitrability to the arbitrator. *See* https://www.adr.org/media/0vrpbnm0/2025_employment_arbitration_rules.pdf ("The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to . . . the arbitrability of any claim.").

[3] In fact, Blue did not respond to Phoenix Mercury's delegation clause argument at all and has therefore waived any argument regarding the clause. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue" (simplified)); *see also Bielski*, 87 F.4th at 1011 ("to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it.").

Accordingly,

**IT IS ORDERED** Phoenix Mercury's motion to compel arbitration (Doc. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** the Clerk of Court is directed to administratively close this case, whereupon, by proper motion from a party, it may be reopened or dismissed with prejudice.

Dated this 29th day of September, 2025.

Honorable Krissa M. Lanham
United States District Judge